**RECEIVED**

**NOV 1 6 2017**

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LISA M. KINCAID,<br> 21458 Grey Slate Court<br> Ashburn, VA 20147, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 17-1941 (RDM) |
| | ) | |
| JEFFERSON B. SESSIONS, | ) | UNDER SEAL |
| Attorney General of the United States,<br> U.S. Department of Justice,<br> Washington, DC 20530, | ) | |
| | ) | |
| | ) | |
| THOMAS E. BRANDON, | ) | |
| Acting Director, Bureau of Alcohol,<br> Tobacco, Firearms and Explosives,<br> 99 New York Avenue, NE<br> Washington, DC 20226, | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1.)     This is an action by Plaintiff, Lisa M. Kincaid, a GS-1811 Special Agent/Criminal

Investigator (Grade 14) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").

Beginning in August of 2012, and until the actions that gave rise to this Complaint, Ms. Kincaid

was a Special Agent in the ATF Internal Affairs Division ("IAD"), a highly prestigious assignment

that she accepted immediately after serving as a supervisory Branch Chief in ATF's Field

Management Staff ("FMS").  Ms. Kincaid has served in ATF with distinction for over thirty years

in positions of trust.  She has held supervisory positions as well, among them Chief of ATF's

Investigative Support Branch, the Resident Agent in Charge ("RAC") of ATF's Pensacola, Florida

Field Office, and the Group Supervisor of ATF's DC Arson Task Force.

2.)     Ms. Kincaid's successful career in ATF was punctuated when defendant discriminated against her because of her sex and retaliated against her for engaging in protected EEO activity, which included participating in the administrative EEO complaints process and conducting an internal IAD investigation that documented numerous instances of sexual harassment and other gross misconduct by the then-Deputy Chief and Chief of ATF's Special Operations Division ("SOD"), Billy L. Wright, Jr. and Charles E. Smith.

3.)     Ms. Kincaid's investigation documented credible evidence that Mr. Wright, among other matters:  shoved his hand up one woman's skirt; discussed oral sex in front of women; made unwanted sexual advances toward women; yelled at, belittled, and berated women; ███████

███████████████████████████████████

4.)     Ms. Kincaid's investigation ultimately expanded, and she later also documented credible evidence that Mr. Smith, among other matters, ██████████████████

████████████████████

5.)     Ms. Kincaid was assigned responsibility for the IAD investigation on July 12, 2013, after ATF Special Agent ("SA") SherryAnn Quindley, an EEO complainant, disclosed that Mr. Wright had discriminated against her and harassed her based on her sex.  She also disclosed that Mr. Wright sexually harassed and/or discriminated against at least five other female employees of SOD.  Ms. Kincaid's investigation documented evidence that corroborated Ms. Quindley's allegations.  It also revealed that Mr. Smith failed to take action when female employees in SOD complained to him about Mr. Wright's sexual harassment and creation of a hostile work

---

1



environment, and that Mr. Smith himself contributed to the alleged hostile work environment in SOD.

6.)     On August 7, 2014, after documenting the extensive misconduct of Mr. Wright and Mr. Smith, and despite efforts of senior ATF managers to impede Ms. Kincaid's investigation, Ms. Kincaid turned in a 272-page Preliminary Report of Investigation outlining the many allegations of misconduct raised against the two senior managers.  After doing so, Ms. Kincaid continued to pursue investigations into Mr. Wright and Mr. Smith, documenting more of their misconduct, while ATF management continued its interference.  This was the first protected activity she engaged in, and it continued through until at least January of 2016.

7.)     Ms. Kincaid conducted her investigation with exemplary thoroughness, professionalism, and diligence; and throughout it, kept senior ATF management apprised of her findings.  Ms. Kincaid's Preliminary Report spanned 272 pages, and included statements from many witnesses, as well as extensive corroborating evidence of misconduct by Mr. Wright and Mr. Smith that was prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.

8.)     On November 20, 2014, Ms. Kincaid engaged in the administrative EEO process for the first time after being passed over for promotion to the position of Assistant Special Agent in Charge of IAD in favor of a less qualified male candidate.[2]

9.)     On September 21, 2015, ATF's parent organization, the U.S. Department of Justice, issued a Final Agency Decision ("FAD") in favor of SA Quindley, finding that Mr. Wright and

---

[2]     Ms. Kincaid withdrew that administrative Complaint in January of 2015.  It is relevant to this proceeding to demonstrate that ATF retaliated against her and as evidence that it subsequently discriminated and retaliated against her.

other SOD management officials discriminated against her on the basis of her sex and/or disability and subjected her to a hostile work environment.

10.)     Just before the FAD was issued, Senator Charles E. Grassley, the Chairman of the Senate Judiciary Committee, issued a letter to then-Attorney General Loretta Lynch and DOJ Inspector General Michael Horowitz, specifically identifying SA Quindley and eight women who had come forward with allegations of sexual harassment, bullying, sex discrimination, and witness intimidation engaged in by ATF.  His letter posed pointed questions about the status of their complaints; what discipline Mr. Wright and Mr. Smith had faced; and the status of their employment with ATF.  Five months later, Defendant sent its response to Senator Grassley, which failed to acknowledge the depth of misconduct by Mr. Smith and Mr. Wright, or the fact that neither of their careers were adversely affected despite the FAD's unequivocal determination that they discriminated against and harassed SA Quindley.  Defendant's response also made no mention that Mr. Wright had lied under oath.

11.)     ATF's first concrete act of discrimination and retaliation against Ms. Kincaid for which redress is sought in this action occurred on November 23, 2015, when it passed her over for the position of the RAC of ATF's Columbia, South Carolina Field Office.  Ms. Kincaid had previously and successfully served as the RAC of ATF's Pensacola, Florida office.  Despite this, ATF selected a lower-graded, far less qualified male agent who had never held a supervisory position and who never engaged in protected EEO activity.

12.)     ATF's second concrete act of discrimination and retaliation against Ms. Kincaid for which redress is sought in this action occurred on December 15, 2015, when it reassigned Ms. Kincaid out of IAD involuntarily to a materially less desirable position as a non-supervisory Program Manager in FMS – an organization in which Ms. Kincaid had previously served as a

supervisory Branch Chief – and treated her disparately in comparison to comparable male colleagues.

13.) ATF's stated reason for Ms. Kincaid's reassignment was the pretext that Ms. Kincaid had disclosed confidential information about her investigation of Mr. Smith to her husband, a retired ATF Special Agent in Charge. In truth, Mr. Smith's gross misconduct and the IAD and OIG investigations into him were already well-known throughout the community of current and former ATF Special Agents, as well as IAD management.

14.) By taking the foregoing actions and others, Defendant discriminated and retaliated against Ms. Kincaid because she is female, for utilizing the administrative EEO complaints process, for documenting the discrimination, harassment, and misconduct on the part of Mr. Wright and Mr. Smith, and for reporting it to senior ATF management.

15.) This case seeks redress for defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2, and §2000e-3(a) (incorporated by reference into 42 U.S.C. §2000e-16(c)). By way of relief, it seeks:  a.) Ms. Kincaid's restoration as a Criminal Investigator GS-1811 in IAD, reassignment to the supervisory position of RAC of the ATF Field Office in Columbia, South Carolina, or to a comparable position; b.) record correction; c.) restoration of leave used by Ms. Kincaid because of defendant's unlawful actions; d.) compensatory damages and expenses incurred in the pursuit of her claims; and e.) an award of attorney's fees and costs.

## Parties, Jurisdiction, And Venue

16.) Plaintiff Lisa M. Kincaid is and at all times relevant was a GS-1811-14 Special Agent/Criminal Investigator with ATF. Ms. Kincaid is a female who engaged in protected EEO activity and resides at the address recited in the caption of this Complaint.

17.)    Defendant Jefferson B. Sessions is the Attorney General of the United States and

as such is the official who heads the United States Department of Justice ("DOJ"),of which ATF

is a part.  Defendant Thomas E. Brandon is the acting Director of ATF, which is a bureau within

DOJ.  The mission of ATF includes protecting communities from violent criminals and criminal

organizations, from the illegal use and trafficking of firearms, from the illegal use and storage of

explosives, from acts of arson and bombings, from acts of terrorism, and from the illegal diversion

of alcohol and tobacco products.  Defendants are sued in their official capacity only.

18.)    Jurisdiction of this Court is based upon 28 U.S.C. §1332; and 42 U.S.C. §2000e-16

(incorporating by reference 42 U.S.C. §2000e-5(c)).   Venue lies here pursuant to 42 U.S.C.

§2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)) because a substantial majority of

the operative facts of defendant's discrimination and retaliation took place in Washington, D.C.

## STATEMENT OF FACTS

### Background

19.)    Ms. Kincaid is a female who, until her involuntary reassignment, was a Special

Agent/Criminal Investigator GS-1811-14 in the ATF Internal Affairs Division ("IAD"), a

component of the bureau's Office of Professional Responsibility and Security Operations

("OPRSO").   In that position, Ms. Kincaid was responsible for conducting highly complex,

sensitive, and controversial investigations of ATF employees.  The investigation at issue in this

case was particularly sensitive because it involved senior ATF managers, including the former

Deputy Chief and Chief of ATF's Special Operations Division ("SOD"), Billy Wright and Charles

Smith.

20.)    Ms. Kincaid has been an ATF Special Agent since 1987.  Among her assignments,

Ms. Kincaid served in IAD twice for a total of eight years; as the Chief of ATF's Investigative

Support Branch for three years; as the supervisory Resident Agent in Charge ("RAC") of ATF's Field Office in Pensacola, Florida, for three years; as a Group Supervisor in ATF's D.C. Arson Task Force for a year and a half; and in other assignments as an ATF Special Agent and Program Manager.

21.)    Ms. Kincaid's career with ATF has been highlighted with many outstanding ratings, performance awards, and promotions, and her conduct has always been beyond reproach.

22.)    At all times relevant, Ms. Kincaid's first-line supervisors in IAD were Assistant Special Agents in Charge ("ASAC") Daniel Machonis and, beginning in the spring of 2015, Arthur Peralta.  Her second-line supervisor was Special Agent in Charge ("SAC") Thomas L. Chittum III until November of 2014, when he was replaced by Thomas Murray.

23.)    Other relevant management officials in Ms. Kincaid's chain-of-command who participated in discriminating and retaliating against her include, but are not limited to:  OPRSO Deputy Assistant Director Daryl McCrary and his predecessor, Joel Roessner; OPRSO Assistant Director Melvin King and his predecessor, Michael Gleysteen; Special Agent in Charge of ATF's Charlotte, North Carolina Field Division, Christopher J. Hyman; ATF Associate Deputy Director Ronald Turk; and ATF Deputy Director Thomas Brandon.  Mr. Brandon currently serves as ATF's Acting Director.

24.)    Mr. McCrary, Mr. Gleysteen, Mr. Roessner, Mr. King, Mr. Turk, and Mr. Brandon actively participated in the discriminatory and retaliatory actions that are the subjects of this Complaint from their assigned duty stations in ATF Headquarters in Washington, D.C.

### The Role of IAD

25.)    The role of IAD is to impartially investigate allegations of employee misconduct and, when warranted, report significant findings to DOJ's Office of Inspector General ("OIG").

7

Such misconduct could include, but is not limited to, employee corruption such as bribery or embezzlement, civil rights abuses, violence, ethics violations, and prohibited personnel practices.

26.)    When IAD receives a complaint of potential employee misconduct, if it is determined that a preliminary investigation is warranted, the preliminary investigation is assigned to a Special Agent to determine whether the alleged misconduct warrants further inquiry.

27.)    At the conclusion of the preliminary investigation, the investigating agent prepares a preliminary report, which is elevated to the SAC and ASAC of IAD to determine whether its findings warrant the opening of a full investigation. If so, the report is forwarded to the Assistant Director of OPRSO for approval and, if approved, the DOJ Office of Inspector General ("OIG") has a "right of first refusal" to investigate the allegations of misconduct at issue. If the OIG decides not to take a case, it is converted to a full internal investigation within IAD. Barring unusual circumstances, it is standard practice for the IAD agent who conducted the preliminary investigation to remain as the case agent if and when it is converted to an internal investigation.

28.)    Upon completion of the OIG or internal IAD investigation, a Report of Investigation ("ROI") is prepared and forwarded to ATF's Professional Review Board ("PRB"). The PRB then reviews the facts of the case, determines if misconduct has occurred, and, if so, proposes a penalty based on ATF's table of penalties, up to and including removal.

### SherryAnn Quindley's Allegations of Sexual Harassment and Sex Discrimination

29.)    In the spring of 2013, SherryAnn Quindley, a Special Agent in ATF's Special Operations Division ("SOD"), filed an informal EEO complaint alleging that former SOD Deputy Chief Billy Wright had discriminated against her, harassed her, and subjected her to a hostile work environment.

30.)    On June 20, 2013, during the administrative EEO complaints process, SA Quindley disclosed that Mr. Wright also discriminated against and/or sexually harassed at least five other women, and rendered their work environment hostile.

31.)    SA Quindley had on numerous occasions brought Mr. Wright's discrimination and harassment to the attention of Mr. Smith. Mr. Smith was dismissive of Ms. Quindley's allegations and failed to take effective remedial action.

**Plaintiff's Investigation Uncovers**
**Additional Misconduct on the Part of Mr. Wright and Mr. Smith**

32.)    On July 12, 2013, Ms. Kincaid was assigned and opened a Preliminary IAD Investigation into SA Quindley's allegations about Mr. Wright.

33.)    Between August and October of 2013, Ms. Kincaid interviewed 30 witnesses and reviewed the email accounts of numerous management officials, including those of Mr. Wright and Mr. Smith, in investigating SA Quindley's allegations.

34.)    ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

35.)    In addition to corroborating SA Quindley's allegations, Ms. Kincaid's investigation uncovered and corroborated other acts of serious misconduct and violations of Title VII by Mr. Wright, including:

   a.   Shoving his hand up the skirt of a female ATF attorney while on official ATF travel in Chicago, Illinois;

b.  Discussing oral sex in front of female ATF employees ███████████

████████████████████████████████████████;

c.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████;

d.  ████████████████████████████████████████████████████

██████████████;

e.  Yelling at, berating, and bullying female subordinates; taking away their
responsibilities; and subjecting female employees to greater scrutiny than his
male subordinates;

f.  Retaliating against female employees, including referring the woman he
inappropriately touched for investigation; lowering the performance appraisals
of women who filed complaints against him; and proposing SA Quindley's
suspension after she filed an EEO complaint;

g.  ████████████████████████████████████████████████████

████████;

h.  ████████████████████████████████████████████████████

██████.

36.)  ████████████████████████████████████████████████████

████████████████████████████████████████████████████;

a.  ████████████████████████████████;

b.  ████████████████████████████████████████████████████

█████████████████████████████████.

c. 

d. Failing to take any effective remedial action after receiving credible allegations of Mr. Wright's repeated and serious violations of Title VII.

### Plaintiff's Preliminary Report And
### ATF Management's Interference With A Full Investigation

37.)   Ms. Kincaid kept ATF management contemporaneously apprised of her findings as she worked through her Preliminary Investigation. She completed initial witness interviews and assembly of evidence in September of 2013 and briefed SAC Chittum and ASAC Machonis on her findings. At SAC Chittum's request, she provided a written summary so that he could in turn brief Mr. Gleysteen.

38.)   From that point forward, senior ATF management, including Mr. Gleysteen, Mr. Roessner, and SAC Chittum, actively interfered with Ms. Kincaid's ability to complete the Preliminary Investigation in a timely manner, and intentionally delayed converting it to a full IAD investigation, thus preventing it from being referred to OIG.

39.)   In October of 2013, SAC Chittum instructed Ms. Kincaid to begin a new investigation of a different ATF employee and make it her top priority. SAC Chittum was well aware that Ms. Kincaid already had a full investigative docket and that she could not contemporaneously move forward with the Wright investigation. As a result, she was forced to set aside the Wright investigation for five months.

40.)   After Ms. Kincaid resumed the Wright investigation in the spring of 2014, SAC Chittum actively disparaged SA Quindley's allegations and was dismissive of Mr. Wright's violations of Title VII. Nonetheless, Ms. Kincaid continued working diligently on the

investigation over the coming months as the allegations of misconduct against Mr. Wright and Mr. Smith continued to mount.

41.)   On August 7, 2014, Ms. Kincaid completed the first phase of the Wright investigation by submitting a 272-page Preliminary Report of her findings to ASAC Machonis and SAC Chittum.

42.)   This report encompassed and documented SA Quindley's original allegations against Mr. Wright, as well as the additional instances of sex discrimination, sexual harassment, and other allegations of wrongdoing against him that Ms. Kincaid uncovered during the course of her investigation.  It also brought to light the allegations of wrongdoing against Mr. Smith and other management officials and the failure to remedy them.

43.)   After reviewing her preliminary report, ASAC Machonis informed Ms. Kincaid that he believed it was extremely thorough and that she had documented numerous instances from multiple sources that warranted further investigation.  ASAC Machonis returned the preliminary report to Ms. Kincaid for some minor corrections that she promptly made, and then, as was standard practice in IAD, ASAC Machoins provided a copy to SAC Chittum.  ASAC Machonis also electronically forwarded it to Mr. Roessner and Mr. Gleysteen with the recommendation that it proceed to the next level and be opened as a full investigation.  At this juncture, if Mr. Gleysteen had approved the case to be opened, DOJ OIG would have been provided a copy of the preliminary report and would have had the right of first refusal to conduct the full investigation.

44.)   In July of 2013, when the preliminary investigation was opened and assigned to Ms. Kincaid, Mr. Gleysteen had decided to recuse himself due to prior negative history he had with SA Quindley.  Despite this, after receiving Ms. Kincaid's ROI, Mr. Gleysteen reviewed it and refused to convert Ms. Kincaid's preliminary investigation to a full investigation.

45.) SAC Chittum likewise refused to take steps to open a full investigation, falsely claiming that Ms. Quindley's allegations did not warrant one because they were already being investigated in the context of her EEO complaint.

46.) By failing to follow ASAC Machonis' recommendation, SAC Chittum and Mr. Gleysteen attempted to conceal Mr. Smith and Mr. Wright's pervasive misconduct and violations of Title VII from the OIG. They also attempted to prevent the allegations from being referred to ATF's Professional Review Board, which would have determined what disciplinary action, if any, to take against them, up to and including removal.

47.) As will be discussed in more detail below, in the months that followed Ms. Kincaid's submission of the Preliminary Report, OPRSO Management, including SAC Chittum, Mr. Roessner, and Mr. Gleysteen, intentionally continued to prevent the serious allegations of Title VII violations and other misconduct against Mr. Wright and Mr. Smith from coming to light.

**Plaintiff's Non-Selection for the IAD ASAC Position and Informal EEO Complaint**

48.) On August 28, 2014, three weeks after Ms. Kincaid turned in the Wright Preliminary Report for review by IAD management, the vacancy of a second GS-15 ASAC position in IAD was announced.[3]

49.) Ms. Kincaid timely applied for the position and was notified that she had been placed on the "Best Qualified" list and referred for an interview.

50.) Ms. Kincaid was interviewed for the IAD ASAC position on September 22, 2014 by a panel consisting of IAD SAC Chittum, two managers from OPRSO, and a manager from the Public and Government Affairs unit.

---

[3] Mr. Machonis remained as the other ASAC in IAD after this position was announced and a selection was made.

13

51.) Later that same afternoon, SAC Chittum advised Ms. Kincaid that she was not selected for the position. A male Special Agent, Arthur Peralta, was selected instead.

52.) Ms. Kincaid was considerably more qualified for the ASAC position than Mr. Peralta. She had better and greater experience, and, as confirmed by two members of the interview panel, her written submissions and interview were both much stronger than his.

53.) On November 20, 2014, Ms. Kincaid initiated the informal administrative EEO complaints process over being denied promotion to the IAD ASAC position on the grounds that she had been discriminated against because of her sex and retaliated against for her protected EEO activities in conducting the investigation into Mr. Wright and Mr. Smith. She named her husband as her representative, rather than name an attorney, as was appropriate and permissible in the EEO process.

54.) In January of 2015, Ms. Kincaid decided not to pursue the formal EEO complaints process out of fear that she would be subjected to retaliation.

**Plaintiff's Continued Involvement in Investigating Wright and Smith
And Defendant's Continued Interference**

55.) On October 5, 2014, after OPRSO management failed to take any action on Ms. Kincaid's Preliminary Report for nearly two months, SAC Chittum instructed Ms. Kincaid to break out each of the additional allegations of wrongdoing that she uncovered against Mr. Wright, Mr. Smith, and other management officials into four separate incident reports so that they could be investigated separately.

56.) Breaking up Ms. Kincaid's Preliminary Investigation prevented the allegations against Mr. Smith and Mr. Wright from being converted to a full IAD investigation or referred to OIG collectively. As such, it downplayed the pervasiveness of the allegations against them by having each allegation of wrongdoing looked into in isolation rather than as an integrated whole.

14

57.)     Over the course of the next several months, Ms. Kincaid prepared and submitted four separate incident reports for the "breakout investigations" of the non-Title VII allegations against Mr. Wright and Mr. Smith that were uncovered during the Wright preliminary investigation. ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████.[4]

58.)     ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████.

59.)     SAC Chittum was reassigned out of IAD and replaced as SAC by Thomas Murray in November of 2014.  In March of 2015, ASAC Machonis retired and ASAC Peralta took over his involvement the Wright matter moving forward.  Unlike ASAC Machonis, ASAC Peralta was not receptive to its allegations.

60.)     Like SAC Chittum, neither SAC Murray nor ASAC Peralta showed interest in remedying the Title VII violations documented by Ms. Kincaid's Preliminary Report or seeing them referred to OIG all at once.

61.)     On May 15, 2015, ASAC Peralta finally converted the original Wright investigation into a full internal investigation, and promptly reassigned it from Ms. Kincaid to a male agent. The reassignment took place nearly two years after the preliminary investigation was opened, roughly ten months after Ms. Kincaid first submitted the preliminary report, and only after Mr. Gleysteen, Mr. Roessner, and SAC Chittum were no longer assigned to OPRSO.  Defendant later

---

[4]     The fourth "break-out" investigation concerned allegations unrelated to Title VII against management officials other than Mr. Wright and Mr. Smith.

attempted to justify reassigning the Wright investigation away from Ms. Kincaid by claiming that

it lacked objectivity and was not thorough.  In reality, Ms. Kincaid's performance was rated

"Outstanding" during the appraisal period covering her work on the preliminary investigation, and

she was praised for her professionalism in handling it.

### Plaintiff's Continued Involvement In
### Investigating Additional Sex-Related Allegations

62.)    On December 23, 2014, Ms. Kincaid was assigned the full internal IAD



investigation into the allegation that Mr. Wright ████████████████████████████

████████, which was one of the allegations that had been broken out from her original

comprehensive preliminary investigation into all of Mr. Wright's misconduct.

63.)    In addition, on January 29, 2015, Ms. Kincaid was assigned to conduct an

investigation into the allegation regarding the ███████████████████████████

██████████.

64.)    On May 1, 2015, Ms. Kincaid interviewed Mr. Smith regarding these allegations.

Mr. Smith admitted to making the ████████████████████████████████

████████████.

65.)    From July through September of 2015, Ms. Kincaid conducted more than thirty

interviews regarding Mr. Wright's ████████████████████████████

████████.

### Senator Charles Grassley's Letter to Attorney General Loretta Lynch About
### Mr. Smith and Mr. Wright and ATF's Inadequate Investigation and Response

66.)    On September 14, 2015, Senator Charles Grassley, Chairman of the Senate

Judiciary Committee, transmitted a letter to former Attorney General Loretta Lynch and DOJ's

Inspector General Michael Horowitz in order to ascertain the status of the investigation into Mr.

Wright.  Sen. Grassley published the letter on his official Senate website and its contents were circulated online.  Among the allegations that Sen. Grassley inquired into were:

- Mr. Wright's harassment and bullying of SA Quindley;

- Mr. Wright's threat to "break" SA Quindley;

- Mr. Wright's use of SA Quindley's breast cancer diagnosis as an excuse to reassign her duties to male agents;

- Mr. Smith's threat to have SA Quindley investigated by the Office of Professional Responsibility after she brought Mr. Wright's discrimination and harassment to his attention;

- ATF's failure to take corrective action when presented with credible allegations of sex discrimination and harassment.

67.)    Senator Grassley also requested that Attorney General Lynch and Inspector General Horowitz provide information about whether Mr. Smith and Mr. Wright had been disciplined, as well as information about the role of the ATF counsel's office played in potentially delaying and thwarting investigations of discrimination, harassment, and whistleblower retaliation.

68.)    On September 21, 2015, the Complaints Adjudication Division of the Department of Justice issued the Final Agency Decision ("FAD") on SA Quindley's EEO complaint, which found in SA Quindley's favor.  It forced ATF to settle Ms. Quindley's complaint on terms that were unfavorable to ATF, including payment from program funds under the No-Fear Act of 2002, Public Law 107–174.  It also required Mr. Smith and Mr. Wright to participate in EEO training, and required the FAD to be posted publicly in SOD.

69.)    Five months later, on February 12, 2016, Assistant Attorney General Peter J. Kadzik submitted a letter in response to Senator Grassley's inquiry.  That response failed to give

complete and accurate answers to many of Senator Grassley's pointed questions. For example, it incorrectly claimed that IAD does not conduct parallel investigations into allegations of wrongdoing when an EEO complaint has been filed. It also misleadingly claimed that the female employee who alleged that Mr. Wright shoved his hand up her skirt "did not file a direct sexual harassment claim" when in reality, that employee disclosed that information directly to Ms. Kincaid. Defendant's response also failed to state that while formal disciplinary proceedings were pending, Mr. Wright and Mr. Smith continued to serve in prestigious positions within ATF, and were even promoted in title, if not in grade, following the allegations lodged by SA Quindley and others. ███████████████████████████████████████

████████████████████████████████████████████

█████████████

### Plaintiff's Non-Selection for South Carolina RAC Position

70.)   On November 3, 2015, ATF announced the supervisory position of Resident Agent in Charge ("RAC") in its Field Office in Columbia, South Carolina.

71.)   Ms. Kincaid had previously served as the RAC of ATF's Field Office in Pensacola, Florida, from August of 2004 to October of 2007.

72.)   On November 4, 2015, Ms. Kincaid advised SAC Murray that she was interested in applying for the Columbia RAC position. He responded that he would talk to Mr. King and Mr. McCrary about contacting Mr. Gleysteen to support her selection for the position.

73.)   Because Ms. Kincaid was already a GS-14 and had previous supervisory experience, she could have been laterally reassigned into this position without an interview or competition.

74.)   On November 9, 2015, Ms. Kincaid applied for the Columbia RAC position.

75.)     On November 19, 2015, Ms. Kincaid received an email advising her that she was being referred to the selecting official for the position. The selecting official was Christopher J. Hyman, the SAC who oversaw the Columbia, South Carolina office, and a long time professional associate of Mr. Smith. By that time, it was well-known that Mr. Smith was under investigation and that Ms. Kincaid had been deeply involved in investigating him.

76.)     After learning that Ms. Kincaid had applied for the RAC position, SAC Hyman decided to make a selection from a roster of GS-13 candidates, thereby excluding Ms. Kincaid from consideration.

77.)     On November 23, 2015, Ms. Kincaid received notification that she was not selected for the RAC position.

78.)     Instead, SAC Hyman selected Edwin L. Eubanks, III, a GS-13 non-supervisory male agent.

79.)     Ms. Kincaid was far more qualified for the RAC position than Mr. Eubanks. Among her other qualifications, Ms. Kincaid had been a highly successful RAC for over three years and was already a Grade 14. Mr. Eubanks, by contrast, had never been a supervisor and had never had a permanent assignment to one of ATF's prestigious offices like IAD.

## Plaintiff's Involuntary Reassignment

80.)     ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ ██5

81.) ████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████

82.) Although the report did not identify Mr. Smith by name, it was common knowledge at ATF that he was the SAC under investigation. Mr. Smith himself had complained openly about being under this particular investigation. He also bragged that he had been previously the subject of over twenty IAD investigations and that he had eluded discipline.

83.) Ms. Kincaid's husband, Donald Kincaid, is a former ATF SAC. Since his retirement from ATF, Mr. Kincaid, like many former agents and outsiders interested in ATF's activities, circulates news about ATF electronically and publishes news about ATF online. Mr. Kincaid's emails are circulated directly to over 800 retired and current ATF employees. When he received an article concerning the ███████████ into Mr. Smith from another retiree, Mr. Kincaid circulated the article on an email list-serve that he runs. Neither his email nor the article identified Mr. Smith by name.

84.) On ███████████, after circulating the email, Mr. Kincaid was contacted by two individuals who already knew of the ███████████ and who advised him that Mr. Smith was its subject. Neither of these individuals was Ms. Kincaid. After inquiry by several present and former ATF employees about the identity of the SAC who was the subject of the article, Mr. Kincaid confirmed on his email list that it was Mr. Smith.

---

5       Mr. Smith had since been promoted to Special Agent in Charge of ATF's Washington Field Division.

85.)    The fact that Mr. Smith was the individual who was the subject ████████

████████████████ was well-known.  Moreover, the report identified the individual under

investigation as a current SAC who had recently been promoted, which provided further indication

that Mr. Smith was the subject of it.

86.)    Mr. Kincaid had also gained knowledge about Ms. Kincaid's investigation into Mr.

Smith as a result of having served as her representative in Ms. Kincaid's original administrative

EEO complaint, which she commenced in November of 2014.

87.)    The following week, at the direction of Mr. McCrary, Ms. Kincaid met with IAD

SAC Murray and new IAD ASAC Francisco Arredondo.  Neither Mr. Murray nor Mr. Arredondo

asked Ms. Kincaid if she had been the source of her husband's knowledge that Mr. Smith was the

SAC identified by ████ as having engaged in misconduct or whether Ms. Kincaid had known in

advance that her husband would identify Mr. Smith on his email list.

88.)    Rather, the two inquired whether Ms. Kincaid had discussed the Smith ████

████████ with her husband.

89.)    Ms. Kincaid responded candidly that she had discussed the fact that Mr. Smith was

one of the individuals who she was investigating with her husband.  She also informed them that

she had discussed this information in the context of sharing her account of the discrimination and

retaliation she had faced since first being assigned the preliminary investigation into Mr. Wright's

violations of Title VII.

90.)    Mr. Arredondo stated during the meeting that it was common knowledge that Mr.

Smith was the subject of the ████████████.

91.)    Ms. Kincaid was directed to attend a meeting on Friday, December 4, 2015, with

Mr. McCrary and Mr. Murray at ATF Headquarters in Washington, D.C.  There, Mr. McCrary

advised Ms. Kincaid that she was being reassigned involuntarily out of IAD because of the "optics" created by the ████████████████████████ into Mr. Smith and her husband's identification of Mr. Smith by name. As stated above in paragraphs 85 through 90, the fact that Mr. Smith was the subject of the ████████████████ was an open secret.

92.)    Mr. McCrary then advised Ms. Kincaid that the supervisory RAC position in the ATF Field Office in Columbia, South Carolina, was not yet filled and that he would support her reassignment to it.

93.)    Believing the offer to reassign her to the Columbia RAC position to be a sham – as she knew that a selection had been made – Ms. Kincaid advised Mr. McCrary that she would be initiating the EEO complaints process.

94.)    At the direction of Mr. McCrary, on Tuesday December 8, 2015, SAC Murray sent Ms. Kincaid a list of GS-14 vacancies and asked her to advise him which ones were of interest to her. The RAC position in Columbia, South Carolina, was one of the positions on the list.

95.)    The following day, Ms. Kincaid advised SAC Murray that if she had to leave IAD, she wanted to be reassigned to the RAC position in South Carolina.

96.)    Nonetheless, on December 15, 2015, SAC Murray advised Ms. Kincaid that Mr. McCrary directed that she would be involuntarily transferred to the Policy Development and Evaluation Branch ("PD&E"), Field Management Staff ("FMS") in ATF Headquarters as a non-supervisory Program Manager.

97.)    Ms. Kincaid had served as the Chief of the FMS Investigative Support Branch from June of 2009 to August of 2012, and in that position supervised Program Managers. She also initiated and oversaw high profile programs, such as the Joint Law Enforcement Operations Program ("JLEO") and the Monitored Case Program. Ms. Kincaid left that position to join IAD

in August of 2012 because of the complexity and sensitivity of IAD investigations and the opportunity for career advancement, among other reasons.

### Plaintiff's Disparate Treatment In Comparison To Wright And Smith

98.)    During Ms. Kincaid's Preliminary Investigation, the Title VII allegations against Mr. Wright and Mr. Smith were brought directly to the attention of then-Acting ATF Director Brandon and Assistant Director of Field Operations Turk.  Mr. Brandon and Mr. Turk failed to take any remedial action.

99.)    Mr. Wright was promoted to SAC of ATF's Kansas City Field Division while he was a subject of Ms. Kincaid's Preliminary Investigation.  After the FAD came out in SA Quindley's favor, Mr. Wright was afforded a highly advantageous transfer as RAC of the ATF Caribbean Field Office in Puerto Rico.  Mr. Wright received that reassignment at his request when his wife, an agent with the Federal Bureau of Investigation, was reassigned there.  Mr. Wright's request for transfer was approved despite the fact that he was under investigation at the time, a violation of ATF policies.

100.)   In January of 2014, while under Preliminary Investigation, Mr. Smith was promoted to the position of SAC of ATF's Washington Field Division.  In December of 2015, Mr. Mr. Smith was promoted again to be the Executive Assistant to the Deputy Director of ATF and remained in that position until he retired in March of 2017.

101.)   At no time were the careers of Mr. Smith or Mr. Wright affected adversely as a result of the ATF investigations into their violations of Title VII.

102.)   Ms. Kincaid, in comparison, was reassigned involuntarily out of her position as a Special Agent in ATF IAD to the far less desirable position at the staff level in FMS on the

pretextual basis that she engaged in misconduct by disclosing information about an investigation to her husband.

## Exhaustion of Administrative Remedies

103.) No later than December 4, 2015, Plaintiff initiated the administrative EEO complaints process. On January 19, 2016, Plaintiff timely filed a formal administrative complaint alleging defendant discriminated against her based on her sex and age and retaliated against her. The Report of Investigation into Plaintiff's administrative complaint was submitted to DOJ on or about October 25, 2016, and subsequently issued to Plaintiff. More than 180 days have elapsed since Plaintiff filed her formal administrative complaint without the issuance of a Final Agency Decision. With the foregoing actions and all others required of her by law, Plaintiff timely exhausted the administrative remedies available to her to challenge the adverse actions and materially adverse actions that comprise the subject matter of this Complaint.

### COUNT I
### (Retaliation – Non-Selection for Columbia, South Carolina RAC Position)

104.) Plaintiff repeats the allegations contained in paragraphs 1 through 103 above as though fully set forth here.

105.) Plaintiff engaged in protected EEO activity beginning in July of 2013 by conducting an investigation into and confirming allegations that the then-Deputy Chief of Special Operations Division ("SOD"), Billy Wright, and then-Chief of SOD Charles Smith, had discriminated against female ATF employees because of their sex, had sexually harassed female ATF employees because of their sex, and had rendered the work environment of female ATF employees hostile because of their sex. She further engaged in protected EEO activity by reporting the findings, conclusions, and progress of her Preliminary Investigation and breakout

investigations into Mr. Wright and Mr. Smith to Defendant on a continued basis until she reported to FMS in January of 2016.

106.)    Plaintiff engaged in protected EEO activity beginning on November 20, 2014, and continuing through January 15, 2015, when she utilized the informal administrative EEO complaints process over being denied a promotion to the position of Assistant Special Agent in Charge of IAD on the grounds that she had been discriminated against because of her sex and retaliated against for her protected EEO activities in investigating Mr. Wright and Mr. Smith.

107.)    On November 9, 2015, ATF announced a vacancy for a GS-14 position as Resident Agent in Charge in Columbia, South Carolina.

108.)    Plaintiff timely applied for the Columbia RAC position before the vacancy announcement closed on November 18, 2015.

109.)    On November 19, 2015, Plaintiff received an email advising her that she was being referred to the selecting official for the position.

110.)    On November 23, 2015, defendant passed over Plaintiff for the Columbia RAC position, and instead selected Edwin L. Eubanks, III, a male with no known prior protected EEO activity.

111.)    Plaintiff was considerably more qualified for the Columbia RAC position than the selectee.  She had previously served as RAC of ATF's Pensacola, Florida office for three years. She had additional supervisory experience as the Chief of ATF's Investigative Support Branch, where she was rated at the Outstanding level for all four years of that assignment, and as a Group Supervisor in ATF's D.C. Arson Task Force for a year and a half.

112.)    Defendant knew of Plaintiff's protected EEO activity and took a materially adverse action against Plaintiff that would dissuade a reasonable worker from making or supporting a

charge of discrimination in failing to select her for the position of RAC of South Carolina. Defendant did so in order to retaliate against Plaintiff for her protected EEO activity.

113.)   Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3 (incorporated into 42 U.S.C. §2000e-16), in taking the foregoing materially adverse action.

114.)   Defendant's violation of Plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, career loss, loss of professional reputation and career opportunities, and loss of enjoyment of life.

## COUNT II
### (Retaliation – Involuntary Reassignment To Staff Position in FMS)

115.)   Plaintiff repeats the allegations in paragraphs 1 through 114 above as though fully set forth here.

116.)   Plaintiff engaged in protected EEO activity beginning in July of 2013 by conducting an investigation into and confirming allegations that the then-Deputy Chief of Special Operations Division ("SOD"), Billy Wright, and then-Chief of SOD Charles Smith, had discriminated against female ATF employees because of their sex, had sexually harassed female ATF employees because of their sex, and had rendered the work environment of female ATF employees hostile because of their sex.  She further engaged in protected EEO activity by reporting the findings, conclusions, and progress of her Preliminary Investigation and breakout investigations into Mr. Wright and Mr. Smith to defendant on a continued basis until she reported to FMS in January of 2016.

117.)   Plaintiff engaged in protected EEO activity beginning on November 20, 2014, and continuing through January 15, 2015, when she utilized the informal administrative EEO complaints process over being denied a promotion to the position of Assistant Special Agent in

Charge ("ASAC") of the ATF Internal Affairs Division ("IAD") on the ground that she had been discriminated against because of her sex and retaliated against for her protected EEO activities in conducting the investigation into Mr. Wright and Mr. Smith.

118.) Plaintiff engaged in protected EEO activity on December 4, 2015 when she informed ATF management that she would be utilizing the EEO process after she was advised that she was being involuntarily reassigned out of IAD.

119.) On December 15, 2015, defendant involuntarily reassigned Plaintiff to the position of Program Manager for FMS.

120.) Plaintiff had served as the FMS Branch Chief of the Investigative Support Branch from June of 2009 to August of 2012, and headed the entire Branch. In that position, she initiated and oversaw high profile programs, such as the Joint Law Enforcement Operations Program and the Monitored Case Program, and supervised Program Managers.

121.) In reassigning Plaintiff to a far less desirable position with significantly diminished responsibilities and significantly fewer future career opportunities, Defendant took a materially adverse action against Plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination. Defendant did so in order to retaliate against Plaintiff for her protected EEO activity.

122.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3 (incorporated into 42 U.S.C. §2000e-16), in taking the foregoing materially adverse action.

123.) Defendant's violation of Plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, career loss, loss of professional reputation and career opportunities, and loss of enjoyment of life.

## COUNT III
### (Sex Discrimination –Non-Selection for Columbia, South Carolina ASAC Position)

124.) Plaintiff repeats the allegations in paragraphs 1 through 123 above as though fully set forth here.

125.) Plaintiff is a female.

126.) On November 9, 2015, ATF announced a vacancy for a GS-14 position as Resident Agent in Charge of Columbia, South Carolina.

127.) Plaintiff timely applied for the Columbia RAC position before the vacancy announcement closed on November 18, 2015.

128.) On November 19, 2015, Plaintiff received an email advising her that she was being referred to the selecting official for the position.

129.) On November 23, 2015, defendant passed over Plaintiff for the Columbia RAC position, and instead selected Edwin L. Eubanks, III.

130.) Plaintiff was considerably more qualified for the Columbia RAC position than the selectee. She had previously served as RAC of ATF's Pensacola, Florida office for three years. She had additional supervisory experience as the Chief of ATF's Investigative Support Branch, where she was rated at the Outstanding level for all four years of that assignment, and as a Group Supervisor in ATF's D.C. Arson Task Force for a year and a half.

131.) In failing to select Plaintiff, Defendant took an adverse employment action against Plaintiff because of her sex.

132.) Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, in taking the foregoing adverse employment action.

133.)   Defendant's violation of Plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, career loss, loss of professional reputation and career opportunities, and loss of enjoyment of life.

## COUNT IV
### (Sex Discrimination – Involuntary Reassignment To Staff Position in FMS)

134.)   Plaintiff repeats the allegations in paragraphs 1 through 133 above as though fully set forth here.

135.)   Plaintiff is a female.

136.)   On December 15, 2015, Defendant involuntarily reassigned Plaintiff to the position of Program Manager for the Policy and Evaluation Branch, Field Management Staff.

137.)   Plaintiff had served as the FMS Branch Chief of the Investigative Support Branch from June of 2009 to August of 2012, and headed the entire Branch.  In that position, she initiated and oversaw high profile initiatives such as the Joint Law Enforcement Operations Program and the Monitored Case Program, and supervised Program Managers.

138.)   In reassigning Plaintiff to a far less desirable position with significantly diminished responsibilities and significantly fewer future career opportunities, Defendant took an adverse employment action against Plaintiff because of her sex.

139.)   Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, in taking the foregoing adverse employment action.

140.)   Defendant's violation of Plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, career loss, loss of professional reputation and career opportunities, and loss of enjoyment of life.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Lisa M. Kincaid asks that the Court enter judgment in her favor and award her the following relief:

A.      An Order declaring that Defendant violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and restraining and enjoining defendant from further violations;

B. Restoration of Plaintiff as a Criminal Investigator GS-1811 in IAD, reassignment to the supervisory position of RAC of the ATF Field Office in Columbia, South Carolina, or reassignment to a comparable position;

C. Restoration of leave used by Plaintiff;

D. An award of attorney's fees and costs incurred in the prosecution of this action;

E. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation and career opportunities, and loss of enjoyment of life caused by defendant's unlawful actions;

F. Expenses incurred in the pursuit of Plaintiff's claims; and

G. Such other relief as may be just and appropriate.

**JURY DEMAND**

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,


_____
Robert C. Seldon, Esq.
D.C. Bar No. 245100


_____
Charlene Bofinger, Esq.
D.C. Bar No. 369979
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
(202) 393-8200
Counsel for Plaintiff

31