UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA M. KINCAID,<br><br>    Plaintiff,<br><br>  v.<br><br>PAMELA JO BONDI,<br>Attorney General of the United States,<br><br>    Defendant. | Civil Action No. 17-1941 (RDM) |

## JOINT PRETRIAL STATEMENT

Robert C. Seldon, Esq.
 D.C. Bar No. 245100
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200

Sundeep Hora, Esq.
Alderman, Devorsetz & Hora, PLLC
1025 Connecticut Avenue, N.W.
Suite 615
Washington, D.C. 20036
(202) 969-8220

*Counsel for Plaintiff*

JEANINE FERRIS PIRRO
United States Attorney

ANNA D. WALKER
BRENDA GONZÁLEZ HOROWITZ
DOUGLAS C. DREIER, D.C. Bar #1020234
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252-2500 (main)

*Attorneys for the United States of America*        Dated: July 14, 2025

**JOINT PRETRIAL STATEMENT**

Plaintiff Lisa Kincaid and Defendant Pamela Jo Bondi, in her official capacity as Attorney General of the United States, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") respectfully submit this Joint Pretrial Statement addressing the issues specified in Local Civil Rule 16(b) and this Court's Pretrial Minute Order of January 30, 2025. Accompanying this Pretrial Statement is a copy of each party's proposed *voir dire*, Preliminary and Final Instructions, Exhibit Lists, Witness Lists, Deposition Designations, Verdict Forms, and the other parties' respective objections starting with Exhibit A.

**Local Rule 16(b)(2)**

I.   **Joint Statement of the Case**

This employment case arises under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-16(c), *et seq.*, and, more specifically, involves Plaintiff's claims that she was retaliated against for engaging in prior protected activity described under Title VII's provisions that prohibit retaliation against employees who engage in protected opposition to an employer's unlawful employment practices as that term is defined in 42 U.S.C. § 2000e-2 ("oppositional activity"), and participate in the administrative Equal Employment Opportunity ("EEO") complaints process. 42 U.S.C. § 2000e-3 (incorporated by reference into 42 U.S.C. § 2000e-16(c)) ("participatory activity").

The plaintiff in this action, Lisa M. Kincaid, was a former Special Agent employed by ATF until May of 2019 when she reached the mandatory retirement age of 57. Ms. Kincaid claims that her former employer, ATF, retaliated against her for engaging in both types of activity protected by Title VII. ATF denies Ms. Kincaid's allegations and responds that all of its actions were taken for legitimate nonretaliatory reasons.

In accordance with the provision of Title VII that applies to federal employees, the current Attorney General Pamela J. Bondi is the named defendant, succeeding Jefferson Sessions and Merrick Garland as the named defendants, as heads of the Department of Justice. 42 U.S.C. § 2000e-16(c). None of these three Attorney Generals took any of the actions that are at issue in this case, and none is liable individually or officially. The officials or managers of ATF, whom Plaintiff claims are responsible for her adverse employment actions, are not liable individually or officially.

The Court has jurisdiction pursuant 28 U.S.C. § 1331, 42 U.S.C. § 2000e-16(c) (incorporating 42 U.S.C. § 2000e-5(f).

## II.     Plaintiff's Statement of Claims

Title VII makes it unlawful for all employers including the federal government and its agencies to discriminate against employees on the basis of race, sex, sexual orientation, religion, and national origin. Title VII also prohibits employers from retaliating against their employees for expressing their opposition to employment practices that violate or could have violated Title VII and for filing an EEO complaint. Ms. Kincaid's case arises under both of these anti-retaliation provisions of Title VII.

In June of 2013, Ms. Kincaid was assigned responsibility to conduct an initial review of alleged sex harassment, discrimination, and retaliation in ATF's Special Operations Division or "SOD." The allegations were reported to ATF's Internal Affairs Division ("IAD") in what is known as an Incident Report. In July of 2013, Ms. Kincaid was assigned responsibility to conduct a Preliminary Investigation into these allegations with the approval Michael Gleysteen, the Assistant Director of ATF's Office of Professional Responsibility and Security Operations ("OPRSO"). A Preliminary Investigation is used by IAD to determine whether it will conduct a

more in-depth Internal Investigation or by the Office of Inspector General of the Department Justice ("OIG") to decide whether to conduct a formal investigation of its own.

Ms. Kincaid contends that ATF retaliated against her for opposing employment practices in SOD that did violate or could have violated Title VII: conducting her Preliminary Investigation; submitting Reports of her Preliminary Investigation to ATF officials and managers and discussing her Preliminary Investigation with ATF officials and managers; and pushing back on ATF managers and officials when they would not take action in response to her Preliminary Investigation and to related EEO matters of other women.

Ms. Kincaid also alleges that she was retaliated against for filing an EEO complaint and for informing ATF that she would be filing an EEO complaint and because she had filed one previously.

On November 30, 2015, Charles Smith, the former Chief of SOD, sent an email to Melvin King, who succeeded Mr. Gleysteen as Assistant Director of OPRSO, and Mr. Gleysteen, who by that time was Assistant Director of ATF's Office of Field Operations, complaining that Ms. Kincaid and SherryAnn Quindley, the complaining witness in her Preliminary Investigation into sex discrimination, harassment, and retaliation in SOD and the prevailing complainant in *In the Matter of SherryAnn Quindley v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* Agency Complaint No. ATF-2013-06111 (Sept. 21, 2015), had "targeted" him "for the past two years" and that Ms. Kincaid had been "providing information on ongoing *investigations* to her husband." (emphasis supplied). The reference in Ms. Smith's email was to Ms. Kincaid's investigations of Mr. Smith in her Preliminary Investigation into sex discrimination, harassment, and retaliation in SOD and her serving as a case agent in the investigation of Mr. Smith's on-duty gambling and related misconduct by the Office of Inspector General of the Department of Justice.

4

When asked by her managers IAD in December of 2015, Ms. Kincaid volunteered that she shared with her husband Donald Kincaid, a retired senior manager of ATF, that one of the officials she was investigating was Charles Smith. Ms. Kincaid shared that information in seeking her husband's advice on what to do about intimidation and pushback she received from ATF officials and managers in response to her Preliminary Investigation and Reports and potential EEO activity.

Ms. Kincaid alleges that Mr. King and Mr. Gleysteen, who by that time was Assistant Director of ATF's Office of Field Operations, retaliated by taking one or more of three actions separately or as a related group of actions: reassigning her involuntarily out of IAD, reassigning her involuntarily to an ATF support division, and/or denying Ms. Kincaid's request to be reassigned to an ATF Regional Field Office as a Resident Agent in Charge. *See* Pl. 3rd Am. Cplt., ECF# 160, Count I and Count II, ¶¶ 104 *et seq*. Plaintiff's proposed Jury Instructions instruct the jury to consider these actions separately or as a group as "you see fit. "Nonstandard Instruction: Protected Activity," Causation", Section iii. "Harm." ATF alleges that Ms. Kincaid's disclosure to her husband that she was investigating Mr. Smith violated ATF's confidentiality policy.

Ms. Kincaid's proposed Final Jury Instructions correctly state that she does not have to prove that ATF retaliated against her solely because of her protected activity, or that it was a more significant factor than her alleged violation of ATF confidentiality policy. Rather, ATF's liability turns whether retaliation was *a* determinative factor in its actions toward her, and that both her protected activity and alleged violation of ATF policy could be determinative factors. Pl. Proposed Final Instruction "Nonstandard Instruction: Knowledge, Multiple Actors, Causation", Section iii. "Causation."[1]

---

[1] The sources for plaintiff's proposed Final Instruction include *Bostock v. Clayton County, Georgia*, 590 U.S. 644, 656 (2020) ("As it has in other statutes," Congress "could have added

To the extent that the Court wants further information about plaintiff's evidence of retaliation, plaintiff respectfully refers the Court to her the Argument section of opposition to defendant's motion for summary judgment, including but not limited to Section II ("There Is A Genuine Issue Of Material Fact Whether Retaliation And Discrimination Were Among the Proximate Causes Of Kincaid's Transfers"); Section IV (There Is An Overwhelming Record of Discrimination and Retaliation"); Section IV.A ("King And Gleysteen Lack Credibility"); Section IV.B. ("Kincaid Was Denied The Right To Contest Being Reassigned"); Section IV.C ("Gleysteen And King Expressed Antagonism Toward Kincaid"); Section IV.D ("Kincaid Was Involuntarily Reassigned At The First Opportunity"); Section IV.E ("Denial Of Kincaid's Requested Reassignment Was Due To Prohibited Animus"); Section IV.R ("ATF's Reasons For Denying Kincaid's Requested Reassignment Are Pretextual");Section IV.G ("ATF's Alleged Comparator Was Treated More Favorably Than Kincaid"); and Section IV.H ("ATF's Overall Treatment Of Female Agents Is Antagonistic.").

In addition, Counts II and III of Plaintiff's Third Amended Complaint, filed without opposition by ATF to include facts learned discovery, specifically referred to plaintiff having been

---

'solely' to indicate that actions taken 'because of' the confluence of multiple factors do not violate the law" or "it could have added primarily." "But-for causation "can be a sweeping standard" and "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision … so long as [retaliation] was one but-for cause of that decision.") (emphasis in original); *Staub v. Proctor Hosp.*, 562 U.S. 411, 419-20 (2011) ("it is common for injuries to have multiple proximate causes.") (quoted in *Bostock*, 562 U.S. at 420 (quoting *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010)); *Burrage v. United States*, 571 U.S. 204, 211-12 (2014) (An act can proximately cause an injury even if it was no more than "the straw that broke the camel's back."); *Ponce v. Billingham*, 679 F.3d 840, 846 (D.C. Cir. 2012) ("[W]e never said – nor could we [] –that a plaintiff in a but-for case must show that an adverse employment action occurred solely because of a protected characteristic."); and this Court's Final Instructions in *Coats v. DeVos, ECF #51 at 35, Civ. Action No. 13-2001 (RDM)* (**Plaintiff "need not show that" retaliation "was the sole reason for the defendant's decision.")** *(emphasis supplied).*

subject to three different retaliatory materially adverse actions; *i.e.*, the denial of her request to be reassigned to the position of Resident Agent in Charge of the ATF Field Office in Columbia, South Carolina; her involuntary reassignment out of IAD; and her involuntary reassignment to FMS. ECF# 160, Count I and Count II, ¶¶ 104 et seq,

Plaintiff will be prepared to address these issues at the Pretrial Conference and, if the Court so directs, will do so sooner.

### III.     Defendant's Statement of Defenses

This case involves Plaintiff's work as an investigator in ATF's Internal Affairs Division ("Internal Affairs"), where she worked from August 2012 until January 2016 when she was transferred from Internal Affairs to the Field Management Staff. In her role as an investigator with Internal Affairs, Plaintiff's job required her to impartially investigate complaints of wrongdoing and allegations of discriminatory behavior within ATF. Internal Affairs was a section within the Office of Professional Responsibility and Security Operations ("Office of Professional Responsibility"), which was run by an Assistant Director and Deputy Assistant Director.

In July 2013, Plaintiff was assigned to conduct a preliminary investigation into allegations of sexual harassment reported by Special Agent SherryAnn Quindley (hereinafter the "Quindley Preliminary Investigation") regarding a management official in the Special Operations Division ("Special Operations"). One of the other management officials named as a subject in the investigation was Charles Smith, the Chief of Special Operations.

More than a year later, on August 7, 2014, Plaintiff submitted a 272-page preliminary investigation report into Quindley's allegations to her supervisors, Assistant Special Agent in Charge Daniel Machonis and Internal Affairs' Special Agent in Charge Thomas Chittum. The preliminary report was extremely wide-ranging and included several other allegations regarding management officials in Special Operations, including allegations that Mr. Smith engaged in

7

gambling while on duty. To thoroughly investigate these wide-ranging allegations, Special Agent in Charge Chittum instructed Plaintiff to separate the non-sexual harassment allegations from the sexual harassment allegations and create four separate investigations for the non-sexual harassment allegations. Shortly after doing this, on October 22, 2014, the Office of Inspector General for the Department of Justice ("OIG"), assumed primary responsibility for investigating the allegations of Smith's on-duty gambling and Plaintiff was assigned to monitor that investigation.

In late 2015, the OIG published a report that summarized its findings regarding Smith, finding that he had engaged in on-duty gambling and related misconduct while on duty. Although the report did not name Smith as the subject of the investigation, four days later, Donald Kincaid, Plaintiff's husband and retired ATF agent, sent an email to an ATF distribution list that identified Smith as the subject of the OIG investigation. That email distribution list contained over 800 current and retired ATF agents. Shortly thereafter, Plaintiff met with then Special Agent in Charge of Internal Affairs, Tom Murray, and Assistant Special Agent in Charge Francisco Arredondo regarding whether she had disclosed confidential information to her husband. During that meeting, Plaintiff admitted to disclosing Smith's name to her husband. Plaintiff understood that her admission was in direct violation of the confidentiality agreement she signed when she became an investigator in Internal Affairs. Shortly thereafter, management determined that Plaintiff could no longer serve as an investigator in Internal Affairs and transferred her out of Internal Affairs, into a lateral position with no loss in pay, to Field Management Staff.

Given these events, Defendant disputes that ATF acted with any retaliatory purpose against Plaintiff when the Assistant Director of the Office of Professional Responsibility, Melvin King, made the decision to transfer Plaintiff from Internal Affairs to Field Management Staff at the end

of 2015 early 2016. Rather, King had no choice but to transfer Plaintiff out of Internal Affairs, after Plaintiff admitted that she disclosed confidential information about the Mr. Smith to her husband, who in turn, then publicly disclosed Mr. Smith as the subject of the same investigation to over 800 current and former employees of ATF. After such a public breach of confidentiality, Mr. King testified that keeping Plaintiff with Internal Affairs would have directly undermined the integrity of the entire Office of Professional Responsibility and the reputation of the Internal Affairs Division; Plaintiff simply could not stay with Internal Affairs as King's confidence and trust in her was lost.

      ATF also disputes that Plaintiff was transferred to a position with Field Management Staff for any retaliatory purpose. After King made the decision to transfer Plaintiff out of Internal Affairs, he contacted the Assistant Director of the Field Management Staff, Michael Gleysteen, to help place Plaintiff in a new position outside of the Office of Professional Responsibility and he chose the Field Management Staff as the place to relocate her because it was the largest directorate at ATF with the most vacancies available. Plaintiff was then given a list of open offices with vacancies to which she could choose to be laterally transferred. Of that long list of vacancies, Plaintiff expressed interest in only one position—the Residential Agent in Charge position in Columbia South Carolina. But Gleysteen could not place Plaintiff in the Columbia position because it was unavailable. In November 2015, the selecting official, CJ Hyman, had already made the decision to promote someone to the position from a GS-13 level and at the time Plaintiff asked to be transferred, a merits board was already underway to select a GS-13 candidate for the position, not a GS-14 lateral transfer like Plaintiff. Because Plaintiff had not identified any other position where she would have wanted to transfer, Gleysteen made the decision to transfer Plaintiff to the closest vacancy within Field Management Staff, where Plaintiff's grade could remain the same,

her pay would not decrease, her commute would not change, and no relocation expenses would have to be incurred. Because Plaintiff had previously worked for the Field Management Staff, Gleysteen also believed the move would be a good fit for her.

ATF also disputes that King and Gleysteen were ever aware of Plaintiff's prior EEO activity at the time they made their decisions regarding Plaintiff's transfer from Internal Affairs to Field Management Staff and ATF maintains that Plaintiff's strong viewpoints about the merits Quindley's sexual harassment allegations, which she investigated largely in 2014, had nothing to do with her transfer. Indeed, Plaintiff initiated contact with an EEO counselor in October 2014 after she was non-selected for an Assistant Special Agent in Charge Position with Internal Affairs, but then withdrew her EEO complaint before any of her management officials would have been asked to respond to that complaint. Likewise, Plaintiff's role investigating Quindley's sexual harassment allegations largely ended in December 2014 before King joined the Office of Professional Responsibility and a month before Gleysteen recused himself from any investigations involving Quindley's allegations.

Despite the above-described discrete claims and defenses that remain in this case, Plaintiff has curiously identified for her evidence, a significant amount of records and testimony related solely to the underlying allegations in the Quindley Preliminary Investigation. ATF has objected to his evidence throughout the exhibits attached to this statement and asks that the Court not allow this evidence into the case. Indeed, Plaintiff should not be allowed to allege in support of her case, any cliam or present any evidence in support of her claim that ATF management engaged in sexual harassment, that sexual harassment was widespread, or that there was a culture of sexual harassment, or any variation of the sort, which is not relevant to the remaining claims in this case as to whether Plaintiff was transferred out of Internal Affairs and to a position in Field Management

Staff because of her disclosure of confidential information or for retaliation. Presenting such evidence or facts would be unduly prejudicial to ATF's case as it would essentially turn this entire trial into a trial within a trial about allegations about ATF that are aimed solely to improperly discredit Defendant and are not at all relevant. Plaintiff is not raising any sexual harassment claims and her sole discrimination claim in this case was dismissed. *See* Mem. Op., ECF No. 160 at 51. Moreover, ATF does not dispute that Plaintiff's strong views about the sexual harassment allegations which she was investigating is one of her alleged oppositional activities in this matter. Thus, no evidence related to the underlying allegations in the Quindley Preliminary Investigation is relevant to the remaining claims and any such evidence should not excluded from this trial.

Similarly, Plaintiff intends to introduce the testimony of the subjects of the underlying Quindley Preliminary Investigation—Billy Wright and Smith—which the Court should exclude as not relevant to Plaintiff's remaining retaliation claims in this case. Indeed, this Court has already ruled that Smith and Wright are not proper comparators, so any evidence or testimony about the actions ATF took to discipline them are irrelevant. *See* Summ. J. Mem. Op. (ECF No. 160) at 52-53. Likewise, the motivation for Mr. Smith raising Plaintiff's breach of confidentiality to her management is irrelevant given that Plaintiff's claims depend on what management did with the information that they reasonably believed to be true and Plaintiff herself confirmed such disclosure was true.

Thus, to avoid any attempts to mislead the jury into this irrelevant foray into the underlying allegations of the Quindley Preliminary Investigations and the outcome of any discipline that fell from it, the Court should exclude evidence that would risk expanding this trial beyond the narrow scope the sole remaining claims in this case--whether Plaintiff's transfer from Internal Affairs was retaliatory.

As a final matter, Defendant maintains that the only adverse action at issue in this case is Plaintiff's transfer to a lateral position from Internal Affairs to Field Management Staff. Plaintiff's transfer from the Internal Affairs Division to the Field Management Staff position is one employment action and not two. A transfer from one position to another, innately, cannot be complete without a transfer to that other corresponding position. Plaintiff would also like to allege that her transfer out of Internal Affairs and to the Field Management Staff as opposed to the Resident Agent in Charge position in Columbia, South Carolina, is a third employment action. But as a matter of law, Plaintiff cannot establish that she was entitled to any employment benefit to the Resident Agent in Charge position in Columbia, South Carolina, which was not available to her after her non-selection to that position in November 2015. *See, e.g.*, Summ. J. Mem. Op. (ECF No. 160) at 45 (not identifying her non-selection for the South Carolina position as a retaliation claim going to the jury).

### IV.  Schedule of Witnesses to be Called

Plaintiff's List of Witnesses is attached as Exhibit A.

Defendant's Objections to Plaintiff's List of Witnesses is attached as Exhibit B.

Defendant's Witness List is attached as Exhibit C.

Plaintiff's Objections to Defendant's Witness List is attached as Exhibit D.

*Defendant's statement regarding witnesses:* Defendant's schedule of witnesses to call is dependent on Plaintiff's schedule of witnesses, which Defendant has solicited from Plaintiff and the parties are conferring on that schedule. Defendant may call witnesses listed by Plaintiff. Moreover, as noted in the parties' witness exchanges, attached, Defendant has objected to several of Plaintiff's proposed witnesses on the grounds that they will testify to information that is not relevant, confusing the issues, and will result in mini trials in violation of Federal Rule of Evidence 403. Defendant will address these objections in more detail in its anticipated *motions in limine*.

*Agreement as to Witnesses*: Without waiving Defendant's objection that Plaintiff cannot ask the Court to compel ATF witnesses who reside outside of the Court's subpoena power to testify for her case in chief, the parties have agreed that ATF will facilitate having those ATF witnesses who reside outside this Court's subpoena power and who agree to cooperate to testify to be called for Plaintiff's case in chief. Plaintiff has agreed to waive scope objections to ATF's direct examination of each witness immediately after Plaintiff's cross-examination of these witnesses during her case-in-chief. Plaintiff notes that these subjects and others were addressed by the Court in the hearing on April 22, 2025.

### V.     List of Exhibits[2]

Plaintiff's List of Exhibits That It Intends To Offer at trial is attached as Exhibit E.

Defendant's Objections to Plaintiff's List of Exhibits That It Intends to Offer is included with Exhibit E.

Defendant's List of Exhibits that It Intends to Introduce at Trial, is attached as Exhibit F.[3]

Plaintiff's objections to Defendant's List of Exhibits that It Intends to Introduce at Trial, is attached as Exhibit F.

*Defendant's statement regarding exhibits and objections:* In general, Defendant objects to the admissibility of statements in Plaintiff's exhibits (1) that constitute inadmissible hearsay and (2) where the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting

---

[2]     The parties' objections to one another's exhibits are overall objections based on the subject matter of witnesses' anticipated testimony and do not include objections that may be made during trial or in motions *in limine*¸ except as otherwise provided by LCivR 16.5(b)(6).

[3]     At this time, Defendant's exhibit list includes all exhibits that Defendant, currently, intends to offer at trial.

cumulative evidence. Fed. R. Evid. 403, 801, 802. Defendant intends to discuss these objections in more detail in a motion *in limine*.

*Plaintiff's Response to Defendant's statement regarding exhibits and objections:* Plaintiff's Objections to defendant's proposed exhibits are contained in Exhibit F and will be addressed further in one or more of plaintiff's anticipated motions *in limine*.

## VI. Deposition Designations and Objections

Plaintiff's deposition designations are to the deposition testimony of Mr. Wright and attached as Exhibit G.

Defendant's objections to Plaintiff's deposition designations are included in Exhibit G.

Defendant's counter designations to Plaintiff's deposition designations are also included in Exhibit G.

Plaintiff's Response to Defendant's Counter-Designations are also Attached as Exhibit. G. In essence, it explains that the one subject of the deposition testimony of Billy Wright, Jr. was explained in Plaintiff's Witness List, that defendant's counter-designations are irrelevant to that subject, and that plaintiff's counsel will confer with defendant's counsel about any alleged errors in the page and line numbers of the designation.

*Defendant's statement regarding deposition designations and objections:* As noted in Defendant's objections to Plaintiff's deposition designations, Defendant objects to Plaintiff's deposition designations for Billy Wright as irrelevant and to the extent any probative value exists, it is likely to be substantially outweighed by the risk of undue prejudice, confusion, and misleading the jury. Defendant reserves the right to use all other deposition testimony for impeachment purposes.

### VII. Proposed *Voir Dire* and Objections

Each Party has proposed its own voir dire. Plaintiff's proposed voir dire is attached as Exhibit H and Defendant's proposed voir dire is attached as Exhibit I. Plaintiff's objections to Defendant's proposed voir dire is attached as Exhibit J. Defendant's objections to Plaintiff's proposed voir dire is attached as Exhibit K.

*Defendant's statement regarding voire dire and objections:* As noted in the attached objections (Exhibit K), Defendant objects to Plaintiff's proposed voir dire because it purports to include discussion of claims that are not before the jury and asks questions which are not relevant to the remaining claims.

*Plaintiff's Response to Defendant's statement regarding voir dire and objections:* Plaintiff's Objections to Defendant's *voir dire* can be found in Attachment J, to which the Court is respectfully referred. Plaintiff is prepared to address any issues regarding proposed *voir dire* at the Pretrial Conference or earlier if the Court so directs.

### VIII. Proposed Preliminary, Final, and Standard Instructions and Objections

Each party has proposed jury instructions. Plaintiff's proposed Preliminary and Final jury instructions are attached as Exhibit L and Defendant's proposed jury instructions are attached as Exhibit M. Plaintiff's objections to Defendant's proposed jury instructions is attached as Exhibit N. Defendant's objections to Plaintiff's proposed jury instructions is attached as Exhibit O.

### IX. Proposed Verdict Forms and Objections

Each party has proposed a verdict form. Plaintiff's proposed verdict form is attached as Exhibit P. Defendant's proposed verdict form is attached as Exhibit Q. Plaintiff's objections to Defendant's proposed verdict form is attached as Exhibit R. Defendant's objections to Plaintiff's proposed voir dire is attached as Exhibit S.

## X.     Defendant's Requested Stipulations

Defendant is willing to stipulate that Plaintiff's role in investigating Quindley's allegations of sexual harassment constitute opposition clause activity under Title VII.

## XI.     Itemization of Damages Sought By Plaintiff

Ms. Kincaid seeks compensatory damages pursuant to 42 U.S.C. § 1981a(a)(1), 42 U.S.C. §§ 1981a(b)(1), (b)(3).

If she prevails at trial, Ms. Kincaid will seek an award of her attorney's fees and costs. The amount of attorney's fees through trial is anticipated to be approximately $2 million. Costs under 28 U.S.C. § 1826 are anticipated to be approximately $17,500.

To the extent they are recoverable, Ms. Kincaid also seeks to recover expenses other than statutory costs, in the approximate amount of $10,000.

Ms. Kincaid also seeks to recover the medical expenses she incurred as a result of defendant's actions. Invoices of Ms. Kincaid's medical expenses were provided to defendant during discovery. They are estimated to be between $5,000 and $10,000 approximately.

*Defendant's Objection to Itemization of Damages Sought by Plaintiff:* Defendant objects to Plaintiff's introduction to the jury of any medical expenses allegedly incurred as a result of her claims in this case, as such evidence is irrelevant to a grant of compensatory damages; thus, this evidence should not be admitted at trial. Defendant also objects to Plaintiff's request for "expenses other than statutory costs," which is not an itemized expenses as it is vague and undefined so that it will likely confuse the jury, but more importantly, it is not relevant to any award of compensatory damages for purposes of admission at trial. Plaintiff's request for attorney's fees and costs is similarly not for the jury's consideration and any mention of those costs for purposes of supporting

16

her compensatory damages is irrelevant and would improper lead to an award of double damages. The Court should exclude any mention of fees and costs from testimony at trial.

*Plaintiff's Response:* LCivR 16(b)(8)-(b)(9) requires that the "itemization of damages" include any that are of "monetary value" and that is the reason why Ms. Kincaid's list of itemized included attorney's fees and costs, reimbursement for medical expenses, and other expenses in this Section. Plaintiff does not intend to seek an award of these items by the jury, consistent with her proposed Verdict Form.

## XII. Equitable Relief

Ms. Kincaid seeks restoration of the leave that she took to pursue her administrative EEO complaint and this action restored or to receive monetary compensation for that leave as calculated by defendant if she prevails.

Ms. Kincaid also seeks to recover the amount for a Fiscal Year 2015 performance-based bonus that she did not receive as a result of being reassigned out of IAD.

*Defendant's Objection to Equitable Relief:* Defendant objects to Plaintiff's request for equitable relief before the jury as such relief is solely for the court to determine after trial. Defendant also objects to Plaintiff's request for equitable relief for a 2015 performance-based bonus, which Plaintiff never sought as grounds for relief in this case. *See* Third Am. Compl., ECF No. 141.

*Plaintiff's Response:* An award of equitable relief is exclusively the province of the Court in the event plaintiff prevails on liability. Restoration of leave used in the pursuit of plaintiff's pursuit of her administrative complaint and this suit until her retirement and a cash award that she was denied as natural consequences of defendant's violations of Title VII are both recoverable as part of equitable relief, s*ee Makray v. Perez*, Civ. Action No. 0520, ECF #124-1 at 3 (BAH),

consistent with *Albermarle Paper Co. v. Moody*, 422 U.S. 422 U.S. 405, 421 (1975) (quoting 118 Cong. Rec. 7168 (1972)).

| | |
|---|---|
| Dated: July 14, 2025<br>Washington, DC | Respectfully submitted,<br><br>JEANINE FERRIS PIRRO |
| _____//s//\_Robert C. Seldon_____<br>Robert C. Seldon, Esq.<br> D.C. Bar No. 245100<br>Seldon Bofinger & Associates, P.C.<br>1319 F Street, N.W., Suite 200<br>Washington, D.C. 20004<br>(202) 393-8200 | United States Attorney<br><br>By:        */s/ Anna D. Walker*<br>    ANNA D. WALKER<br>    BRENDA GONZÁLEZ HOROWITZ<br>    DOUGLAS C. DREIER<br>    Assistant United States Attorneys<br>    601 D Street, NW |
| Sundeep Hora, Esq.<br>Alderman, Devorsetz & Hora, PLLC<br>1025 Connecticut Avenue, N.W.<br>Suite 615<br>Washington, D.C. 20036<br>(202) 969-8220 | Washington, DC 20530<br>(202) 252-2500 (main)<br><br>*Attorneys for the United States of America* |
| *Counsel for Plaintiff* | |